COURT OF CHANCERY
OF THE
STATE OF DELAWARE

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Decided: June 18, 2018

David E. Wilks, Esquire
Scott B. Czerwonka, Esquire
Wilks, Lukoff & Braceridge, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19806

John A. Sensing, Esquire
Jennifer Penberthy Buckley, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

RE:  ***Phillip M. Issac and James R. Freedman v. IFTHC, LLC et al.***,
Civil Action No. 2017-0821-TMR

Dear Counsel:

This case arises from Defendants' failure to pay Plaintiffs accrued but unpaid salary. This letter opinion addresses Plaintiffs' motion for partial judgment on the pleadings and Defendants' motion for partial summary judgment. For the reasons stated herein, both motions are denied.

## I.    BACKGROUND

In a meeting on March 31, 2015 (the "Meeting"), the board of directors (the "Board") of IF Technologies, Inc. ("IF Technologies")—then composed of Defendants William Lomicka, Stephen Sautel, Robert Saunders, and Sean Smith—approved a transaction with RemitDATA, Inc. ("RemitDATA") pursuant to which IF Technologies sold substantially all of its assets in exchange for RemitDATA stock

(the "Transaction").[1] As part of the Transaction, IF Technologies then dissolved and transferred its liabilities and RemitDATA stock to Defendant IFTHC, LLC ("IFTHC").[2] IF Technologies' stockholders became unitholders of IFTHC following the Transaction.[3]

At the Meeting, the Board received disclosure schedules (the "Disclosure Schedules")[4] to an asset purchase agreement IF Technologies entered into in connection with the Transaction.[5] The Disclosure Schedules provide that IFTHC is liable for "the accrued but unpaid salaries [of Plaintiffs] reflected on the Balance Sheet [then totaling approximately $284,000[6]]" and "an additional $180,000 in accrued but unpaid salaries as of May 31, 2009, consisting of $40,000 to [Plaintiff Phillip M. Issac] and $140,000 to [Plaintiff James R. Freedman]."[7] Plaintiffs were

---

[1]     Pls.' Answering Br. 5; Am. Compl. ¶ 31.

[2]     *Id.*

[3]     Am. Comp. ¶ 36.

[4]     *Id.* Ex. E, Schedules 4.8, 4.22.

[5]     *Id.* ¶ 30.

[6]     *Id.* Ex. D, Balance Sheet as of March 31, 2015.

[7]     *Id.* Ex. E, Schedules 4.8, 4.22.

the managers of IF Technologies and its predecessor entities for eight years preceding the Transaction.[8]

Also in the Meeting and in connection with the Transaction, the Board approved an amendment to IFTHC's operating agreement (the "Operating Agreement"). Section 13.2 of the Operating Agreement provides that in the event of a dissolution, the "steps to be accomplished" are (A) "a proper accounting" of IFTHC's "assets, liabilities and operations[;]" (B) mailing of notices to creditors; and (C) payment of "all of the debts, liabilities and obligations of [IFTHC.]"[9] After the Meeting, and after speaking to Plaintiffs, IFTHC's legal counsel revised Section 13.2(C) to add the following parenthetical: "(*including, without limitation, the compensation obligations owed to [Plaintiffs] in the aggregate amount of $464,000, and all expenses incurred in liquidation*)" (the "Parenthetical").[10]

On April 3, 2015, the Board distributed an information statement (the "Information Statement")[11] to IF Technologies' stockholders seeking their approval of the Transaction and agreement to be bound by the Operating Agreement following

---

[8]     Pls.' Answering Br. 5.

[9]     Am. Compl. Ex. F, § 13.2.

[10]     *Id.* ¶ 34 (emphasis added).

[11]     *Id.* Ex. I.

the Transaction.[12]  The version of the Operating Agreement attached to the Information Statement contained the Parenthetical to Section 13.2(C).[13]  The stockholders, including three of the Board's four directors who were also stockholders,[14] later approved the Transaction by written consent,[15] and the Transaction closed on August 15, 2017.[16]

On August 31, 2017, Plaintiffs requested payment of their accrued salaries from IFTHC's board of directors (the "IFTHC Board"), which is composed of the same Defendant directors as the Board.[17]  On September 20, 2017, the IFTHC Board responded that "the documentation, which we must rely on, supports that at least some [of the monies distributed to IFTHC], if not all, should flow through the

---

[12]    *Id.* ¶ 36.

[13]    In addition, an attachment to the Information Statement listed "hypothetical . . . pre-allocation expenses" for "Founders['] Accrued Salaries" as $464,000.  *Id.* Ex. J, Attachment K.

[14]    *Id.* Ex. K.

[15]    *Id.* ¶ 40.

[16]    *Id.* ¶ 42.

[17]    *Id.* ¶ 43.

waterfall to partially mitigate the losses incurred by investors[,]" and refused to pay Plaintiffs.[18]

Plaintiffs filed this action on November 15, 2017. Plaintiffs seek approximately $470,000 from Defendants for accrued salaries purportedly due to them under the Operating Agreement and the Kentucky Wages and Hours Act (the "Act").[19] In addition, Plaintiffs seek both an award of liquidated damages in the same amount and attorneys' fees under the Act.[20]

On January 19, 2018, Defendants filed their motion for partial summary judgment pursuant to Court of Chancery Rule 56(c) as to Plaintiffs' claim for liquidated damages and attorneys' fees under the Act. Plaintiffs filed their motion for partial judgment on the pleadings pursuant to Court of Chancery Rule 12(c) as to their claim for breach of the Operating Agreement for their unpaid salaries and for attorneys' fees on February 20, 2018.

---

[18]     *Id*. Ex. L.

[19]     Ky. Rev. Stat. Ann. § 337.385 (West 2018); Am. Compl. ¶¶ 58-61. Plaintiffs live and work in Kentucky. Am. Compl. ¶¶ 2-3.

[20]     Am. Compl. ¶¶ 58-61.

## II. PARTIAL JUDGMENT ON THE PLEADINGS ANALYSIS

Plaintiffs move for partial judgment on the pleadings as to their claim for breach of the Operating Agreement and for attorneys' fees. "This court will grant a motion for judgment on the pleadings pursuant to Court of Chancery Rule 12(c) when there are no material issues of fact and the movant is entitled to judgment as a matter of law."[21] "When considering a Rule 12(c) motion, the court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff."[22] The Court must "therefore accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Rule 12(b)(6). As on a Rule 12(b)(6) motion, however, a court considering a Rule 12(c) motion will not rely upon conclusory allegations of wrongdoing or bad motive unsupported by pled facts."[23] "Although 'all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true . . . neither inferences nor conclusions of fact unsupported by allegations of specific

---

[21]  *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499 (Del. Ch. 2000) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993)).

[22]  *Id.* (citing *Desert Equities*, 624 A.2d at 1205; *Weiss v. Samsonite Corp.*, 741 A.2d 366, 371 (Del. Ch. June 14, 1999), *aff'd*, 746 A.2d 277 (Del. 1999)).

[23]  *Id.* (citing *Kahn v. Roberts*, 1994 WL 70118, at *5 (Del. Ch. Feb. 28, 1994)).

facts . . . are accepted as true.' That is, '[a] trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences.'"[24] "In analyzing a motion to dismiss, the court may consider, for carefully limited purposes, documents integral to or incorporated into the complaint by reference. This same standard logically applies on a Rule 12(c) motion as well."[25]

The pending motion for partial judgment on the pleadings requires me to examine numerous agreements between the parties. "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[26] "When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[27] The terms of the contract control "when they establish the parties' common meaning so that a reasonable person in the position of either

---

[24]  *Id.* (citing *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999)).

[25]  *Id.* (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995)).

[26]  *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[27]  *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (quoting *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

party would have no expectations inconsistent with the contract language."[28] Standard rules of contract interpretation state that "a court must determine the intent of the parties from the language of the contract."[29] "In giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract."[30]

Plaintiffs argue that the Parenthetical to Section 13.2(C) of the Operating Agreement, which IF Technologies' stockholders approved, provides that Plaintiffs' accrued salaries are "debts and liabilities" of IFTHC that must be paid immediately as a result of IF Technologies' dissolution.[31] Defendants respond that the Parenthetical is unenforceable because the Board did not approve it, and the stockholders of IF Technologies were not informed of this fact when they approved the Operating Agreement with the Parenthetical.[32] As a result, Defendants argue

---

[28]   *Id.* (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[29]   *Id.* (quoting *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003)).

[30]   *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913-14 (Del. 2017).

[31]   Pls.' Opening Br. 1.

[32]   Defs.' Answering Br. 2.

that "serious doubts remain concerning the validity and enforceability" of the Parenthetical.[33]  I agree with Defendants that Plaintiffs do not establish as a matter of law that IFTHC has a contractual obligation to pay Plaintiffs' accrued salaries by pointing to the Parenthetical.  Defendants have raised a question of fact as to whether the Parenthetical is operative because IF Technologies' stockholders and the Board may have approved different versions of the Operating Agreement.

Plaintiffs also contend that Section 13.2(C), even without the Parenthetical, requires payment of their accrued salaries.  Section 13.2(C), without the Parenthetical, provides for the payment of "all of the debts, liabilities and obligations of [IFTHC]" before any distributions to IFTHC's unitholders.[34]  Plaintiffs argue that the Disclosure Schedules circulated to the Board before the Meeting and the Information Statement sent to IF Technologies' stockholders listed Plaintiffs' accrued salaries as "debts and liabilities" of IFTHC.[35]  Thus, Plaintiffs contend that Defendants understood that Plaintiffs' accrued salaries are "debts and liabilities" of IFTHC.[36]

---

[33]     *Id.*

[34]     Am. Compl., Ex. F § 13.2.

[35]     Pls.' Opening Br. 3-4.

[36]     *Id.* at 22-23.

Defendants respond by pointing to a purchase agreement IF Technologies entered into in connection with a merger in 2011 (the "2011 Purchase Agreement").[37] Plaintiff Freedman signed the 2011 Purchase Agreement on behalf of IF Technologies.[38] The 2011 Purchase Agreement specifies that Plaintiffs' accrued salaries "[are] to be paid from future profits with approval by the Board of Directors."[39] Defendants argue that nothing about the Operating Agreement alters the 2011 Purchase Agreement language or affects the promise that the accrued salaries, even assuming they *are* debts and liabilities, would only be paid from IF Technologies' profits.[40] Thus, Defendants assert that they owe Plaintiffs nothing for their accrued salaries because IF Technologies was never profitable.[41] I need not resolve at this stage the effect of the 2011 Purchase Agreement. It does, however, convince me that there are factual disputes as to whether Plaintiffs' accrued salaries

---

[37]    Am. Answer, Ex. A; Defs.' Answering Br. 4.

[38]    Am. Answer, Ex. A.

[39]    *Id.* (quoting Am. Answer Ex. 1, Ex. C).

[40]    Defs.' Answering Br. 4.

[41]    Am. Answer, Ex. A.

are "debts and liabilities" of IFTHC as set forth in Section 13.2(C) of the Operating Agreement.[42]

Because there are factual disputes as to whether Plaintiffs' accrued salaries are "debts and liabilities" of IFTHC as set forth in Section 13.2(C) of the Operating Agreement, I deny Plaintiffs' motion for partial judgment on the pleadings. [43]

## III.  PARTIAL SUMMARY JUDGMENT ANALYSIS

Defendants move for partial summary judgment as to Plaintiffs' claim for liquidated damages and attorneys' fees under the Act.  Summary judgment will be "granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any

---

[42]  In addition, Defendants contend that an accounting and notice to creditors must first be performed in accordance with the "series of steps" in Section 13.2 of the Operating Agreement before any "debts and liabilities" are paid. Defs.' Answering Br. 7.  Defendants also argue that Section 13.3 of the Operating Agreement, which refers to an "order of priorities" in Section 13.2, reinforces their interpretation that Section 13.2 must be performed sequentially. *Id*. at 11-12.  Plaintiffs respond that Section 13.2 does not provide any order of priorities and Section 13.3 does not apply to this transaction.  Pls.' Opening Br. 30.  I need not resolve this dispute as it does not affect my analysis or change the outcome of this decision.

[43]  Plaintiffs add that three of the Board's directors signed written consents in their capacity as IF Technologies stockholders acknowledging that they "carefully read and understand[] the scope and effect of the provisions of this Written Consent and the attachments to the Information Statement."  Pls.' Opening Br. 22-23 (quoting Am. Compl. Ex. K).  This fact, however, does not change my analysis at this stage.

material fact and that the moving party is entitled to a judgment as a matter of law."[44]

The movant bears the initial burden of demonstrating that there is no question of material fact.[45] When the movant carries that burden, the burden shifts to the nonmoving party "to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[46] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[47] Even so, the non-moving party may not rely on allegations or denials in the pleadings to create a material factual dispute.[48]

The Act provides that "bona fide executives" are not permitted to recover liquidated damages and attorneys' fees unless "the context and equities of a particular case require that an employee be entitled to [those] remedies[.]"[49]

---

[44] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

[45] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[46] *Id.*

[47] Ct. Ch. R. 56(e); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977); *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000).

[48] *Fike*, 754 A.2d at 260.

[49] Ky. Rev. Stat. Ann. § 337.385.

Kentucky courts have held that the "context" and "equities" of a "bona fide executive's" recovery is a fact specific inquiry.[50]

The parties do not dispute that the Act is applicable to Plaintiffs' claims or that Plaintiffs facially are "bona fide executives" as defined in the Act.[51] Plaintiffs argue that they are entitled to discovery to determine the "context" and "equities" of Plaintiffs' employment.[52] Plaintiffs then list several categories of discovery relevant to determining the "context" and "equities" of the accrual of Plaintiffs' salaries and Defendants' decision to withhold them.[53] Defendants respond that discovery is not needed because the material facts are "already in Plaintiffs' possession" and the other categories of discovery listed by Plaintiffs are "immaterial to the Court's analysis[.]"[54]

As stated above, Kentucky courts have held that determining whether a "bona fide executive" is nonetheless entitled to the remedies available to employees under

---

[50]    *Fox v. Lovas*, 2012 WL 1567215, at *2 (W.D. Ky. May 1, 2012).

[51]    Pls.' Answering Br. 1; Defs.' Reply 4.

[52]    Pls.' Answering Br. 13.

[53]    *Id.* at 13-14.

[54]    Defs.' Reply 12.

the Act is a fact specific inquiry.[55]  In addition, Plaintiffs argue and Defendants admit that "[n]o Kentucky state court has articulated a test for when the 'context requires otherwise.'"[56]   Plaintiffs have raised a number of material factual disputes surrounding the "context" and "equities" of Defendants' withholding of Plaintiffs' accrued salaries.  Thus, because there is a dispute as to material facts, I deny Defendants' motion for partial summary judgment in order to allow discovery into these issues.

## IV.   CONCLUSION

Because there are factual disputes that I cannot resolve at this stage, Plaintiffs' motion for partial judgment on the pleadings and Defendants' motion for partial summary judgment are DENIED.

**IT IS SO ORDERED.**

Sincerely,
*/s/Tamika Montgomery-Reeves*
Vice Chancellor

TMR/jp

---

[55]     *Fox*, 2012 WL 1567215, at *2.

[56]     Defs.' Reply 5.